IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 5, 2019

**STATE OF TENNESSEE v. MAKYLE LOVE**

**Appeal from the Criminal Court for Shelby County**
**No. 16-06589          Paula L. Skahan, Judge**

_____

**No. W2018-00738-CCA-R3-CD**

_____

The Defendant, Makyle Love, was convicted of aggravated rape and was sentenced to twenty-three years of incarceration.  On appeal, the Defendant challenges the sufficiency of the evidence.  Upon review of the record and applicable law, we affirm the Defendant's conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER JJ., joined.

Claiborne Ferguson (at trial and on appeal) and Christopher Lewis (at trial), Memphis, Tennessee, for the Appellant, Makyle Love.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Devon Lepeard and Sarah Poe, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**

**FACTS AND PROCEDURAL BACKGROUND**

The evidence presented at trial established that on April 4, 2016, the Defendant raped the victim, whom he had met on Plenty of Fish, a dating website.  The victim and the Defendant had met in person at least two times before April 4th.  The victim testified that they had plans that night to "have a couple drinks, smoke[,] and just chill."  The Defendant was at work until 9:00 p.m. that evening and did not arrive at the victim's house until after 11:00 p.m.

The Defendant drove the victim to an abandoned house. The victim testified that the Defendant told her that he had to park at the abandoned house because he had family members who lived across the street, but the driveway and road in front of the house were blocked by other parked cars. While parked outside the abandoned house, they listened to music and drank. At some point, the Defendant pulled out a gun and said, "If I pull this trigger[,] it is not going to be a pretty sight. It's going to be ugly." The victim testified that she thought about trying to run away, but dismissed the idea out of fear that the Defendant would shoot her. The Defendant then told the victim to climb into the back seat without exiting the car. He also moved to the back seat. He pulled his pants down and forced her to engage in fellatio followed by penile-vaginal penetration. After the Defendant stopped, he grabbed a Wendy's bag, removed the napkins, and cleaned himself. When he finished cleaning himself, he threw the bag and the napkins out of the car.

The Defendant drove the victim to the street where her house was located. He asked her if she had any money, and she responded that she did not. The Defendant yelled at the victim and demanded she get out of his car. She testified that he pushed her out of his car and that she ran home. When she arrived at home, she told her godmother and her child's father what had happened.

The victim called 911 to report the rape. A recording of her conversation with the dispatcher was entered into evidence. She told the dispatcher that, "Somebody just left me. They put a gun to my head and made me f**k them. They f***ed me raw with no rubber. They f***ed me with a gun to my head." She told the dispatcher that she did not know the Defendant's name because they met online, but she had his cell phone number. Additionally, she offered a description of his vehicle.

Officers arrived at her house within ten minutes of the victim calling 911. After giving the officers a brief statement about what had happened, they drove her back to the abandoned house. The victim testified that she was there answering questions for approximately an hour before officers drove her to the Shelby County Crime Victims & Rape Crisis Center ("Rape Crisis Center") for an examination.

On cross-examination, the victim agreed that the profile name "mrs2thickk" on the Plenty of Fish website belonged to her, that the pictures on the profile were of her, and that she sent messages to the Defendant via the Plenty of Fish mobile phone application. The victim agreed that she and the Defendant exchanged messages. The Defendant entered screen shots of messages between himself and the victim over the State's objection. The messages were exchanged on the Plenty of Fish application and indicated who sent the messages by displaying a profile picture. Defense counsel focused his cross

examination on the topic of whether the Defendant and the victim had agreed to engage in sexual intercourse in exchange for money based on the content of the messages.

On April 3, 2016 at 7:14 p.m., the Defendant sent the victim a message stating "What's up.." She responded at 7:25 p.m., "$$ with me." The Defendant responded at 7:26 p.m., "That's what's up how much" and sent another message at 7:30 p.m., stating, "How much do you want[?]" To which the victim responded at 7:36 p.m., "40 for head 80$ for both." The victim sent the next message at 8:01 p.m. asking "When you ready[?]" The Defendant responded, "What's your number[?]" The two then exchanged phone numbers.

After reviewing the screenshots of the messages, the victim denied sending the 7:36 pm message. She explained that she shared a cell phone with other people who lived in the house and that it was possible that someone else sent that message. She admitted that the Defendant sent her another message the day after the rape simply asking "What's up?" She identified the Defendant in a photographic line up approximately one week later as the man who raped her.

Memphis Police Lieutenant Roosevelt Twilley, the supervisor in the crimes against children and the sex offender registry department, explained the procedure involved when social media, dating websites, and text messages are involved in a sex crime. He explained that screenshots of messages may not be a full and accurate representation of a conversation. On cross-examination, he testified that he did not know if law enforcement downloaded data from the victim's phone. He could not recall if he was directly involved in investigating this case.

Memphis Police Lieutenant Byron Braxton, the lead investigator who was assigned to the sex victims, adult crime unit, testified that the Defendant was developed as a suspect after the officers compared the cell phone number the victim provided with telephone numbers associated with various social media accounts. Lieutenant Braxton explained that he did not immediately ask the victim for a written statement "because she felt she wasn't up to it at the time. She was still pretty upset." On cross-examination, he acknowledged that the victim did not show him the message sent from her Plenty of Fish account stating, "40 for head 80$ for both." He further stated that if he had been aware of that message he would have had reason to suspect the assault might be related to prostitution, but he testified he would have continued to investigate the case as a rape.

Memphis Sergeant John Stone with the crime scene investigation unit, collected the Wendy's bag and napkin that were found at the scene.

Ms. Toni Williams, a nurse practitioner at the Rape Crisis Center, recalled that the victim said "T-Goddy" picked her up from her house around 11:30 p.m. and took her to an abandoned house. The victim stated that while parked outside the house, he put a gun to her head, told her to take of her clothes, get in the back seat, and with a gun to her head, he raped her.

Ms. Williams and the counselor then explained the services the Rape Crisis Center offers, and the victim consented to a full examination. Ms. Williams explained the first step is to take a urine sample. This is used to test for sexually transmitted diseases and pregnancy. Next, the victim removed her clothes because she was still wearing the same clothing that she was wearing at the time of the rape. The victim's clothing was sealed in a plastic bag. Ms. Williams conducted a head to toe examination of the victim. She did not find any injuries on the victim's body and explained that it is not uncommon to find no injuries in rape cases where an adult female is the victim. She took vaginal swabs from the victim that were sealed in the rape kit as well.

Special Agent Laura Boos, who worked for the Tennessee Bureau of Investigation ("TBI") at the Nashville Crime Lab in the forensic biology section, was accepted by the trial court as an expert in forensic analysis of biological fluids and DNA analysis. Agent Boos analyzed known DNA samples from the victim and Defendant. She testified that the first vaginal swab she tested was positive for the presence of sperm cells and the DNA test matched the Defendant. Agent Boos explained pursuant to the TBI's protocol, once one swab tests positive for the presence of sperm cells in rape cases she will not test the remaining swabs unless there has been a request to do so.

After Agent Boos's testimony, the State rested. The Defendant did not offer any proof. The jury found the Defendant guilty of aggravated rape. The trial court imposed a twenty-three year sentence to be served at 100 percent. The Defendant now appeals.

**ANAYLSIS**

The Defendant maintains that the evidence is insufficient to support the jury's conviction. He argues that the messages sent between the Defendant and the victim show the existence of a sex-for-money agreement. The State responds by arguing that the evidence presented at trial overwhelmingly supports the Defendant's conviction.

The standard for appellate review in determining the sufficiency of the evidence is "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have the essential elements of the crime beyond a reasonable doubt.'" *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A defendant "must demonstrate that no reasonable trier of

fact could have found the essential elements of the offense beyond a reasonable doubt" in order to obtain relief on a claim for insufficient evidence. *State v. Perrier*, 536 S.W.3d 388, 408 (Tenn. 2017). Further, because a jury conviction removes a defendant's presumption of innocence and "replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted defendant," who must demonstrate that the evidence is insufficient support the jury's verdict. *Id.*

Appellate courts "will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we reweigh or re-evaluate the evidence." *Id.* (citing *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011)). The determination of "'[t]he credibility of witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.'" *Dorantes*, 331 S.W.3d at 379 (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). Aggravated rape occurs when a defendant forces or coerces the victim to engage in sexual penetration while the defendant is armed with a weapon. T.C.A. § 39-13-502(a)(1).

Viewing the evidence in the light most favorable to the State, we conclude that the evidence presented at trial was sufficient to support the jury's conviction of aggravated rape. The evidence presented at trial established that the Defendant forced the victim to engage in sexual intercourse while he held a gun to her head. As the State points out, the victim's testimony alone is sufficient to uphold a defendant's conviction of aggravated rape. *See State v. Wyrick*, 62 S.W.3d 751, 767 (Tenn. Crim. App. 2001) (holding that although the victim's testimony contained inconsistencies, her testimony was sufficient to uphold the defendant's conviction of aggravated rape). Additionally, DNA evidence established that the Defendant's DNA matched a sample of the victim's vaginal swab. The jury rejected the Defendant's argument that he and the victim engaged in consensual sex in exchange for money. It is apparent from the record that jury heard and rejected the Defendant's argument at trial, and this court will not "reweigh or reevaluate the evidence." *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997).

## CONCLUSION

Based on the foregoing, we affirm the trial court's judgment.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE

- 5 -